IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY SIDES,                            )
               Plaintiff,                  )
                                        )
               vs.                         )         Civil Action No. 03-494
                                        )
OFFICER CHERRY, et al.,                    )
               Defendants.                 )

Amended Report and Recommendation

I.  Recommendation:

      It is respectfully recommended that the Motion for Summary Judgment submitted on

behalf of defendants Cherry, Brown, Rush and Juliani (Docket No. 63) be denied.  It is further

recommended that the motion for summary judgment submitted by plaintiff (Docket No. 69) be

denied.

II.  Report:

      Presently before the Court for disposition is a motion for summary judgment submitted

on behalf of defendants Cherry, Brown, Rush and Juliani[1] and the plaintiff's cross-motion for

summary judgment.

      Plaintiff, Anthony Sides, an inmate at the State Correctional Institution at Camp Hill, has

presented a civil rights complaint which he has been granted leave to prosecute in forma

pauperis.  In the complaint, Sides alleges that on April 20, 2002, while incarcerated at the State

Correctional Institution at Greene, he was assaulted by defendant Cherry; that defendants Rush

and Brown abetted him in committing this assault; that he resisted the attack striking defendant

---

[1]Defendant Lapina was dismissed from this action on October 29, 2003 (Docket No. 37).

Cherry in the mouth; that defendants Cherry, Rush and Brown covered up the assault by failing to file an incident report; that defendants Rush, Brown and Juliani refused to call for medical help for the plaintiff; that he subsequently notified other guards of his need for medical attention and that when the nurse came to dispense inmate medications, he informed her of his needs but was ignored; that the following day he signed up for the next sick-call but was never summoned to the medical department; that on May 7, 2002, he informed physician assistant Lapina of his need for medical attention and she ignored him; that he was not medically examined until May 15, 2002, when all visible signs of the assault had disappeared; that on September 18, 2002, after being transferred to another institution, he was seen by medical personnel who indicated that his neck had been traumatized and medication was prescribed, and that he continues to experience pain from the assault.  These facts are said to state a cause of action under 42 U.S.C. § 1983, and the plaintiff invokes this Court's pursuant to Section 1343 of Title 28, United States Code.  The remaining defendants, Officers Cherry, Brown, Rush and Juliani, now move for summary judgment and the plaintiff has cross-moved for summary judgment.

It is provided in 42 U.S.C. § 1983 that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Summary judgment is appropriate where there are no material issue of fact and the movant is entitled to judgment as a matter of law.  Biener v. Calio, 361 F.3d 206 (3d Cir. 2004). In opposing a motion for summary judgment, a party cannot rest on mere reassertions of the

matter raised in the complaint but must demonstrate by record evidence that material issues of fact exist for resolution at trial. <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480 (3d Cir. 1995).

On March 14, 2007, a Report and Recommendation was filed, recommending that the defendants' motion for summary judgment be granted. On March 29, 2007, the plaintiff filed objections (Docket No. 81) to the Report and Recommendation. Having reviewed these objections and the materials attached thereto, the undersigned submits the following Amended Report and Recommendation.

In their motion, the movants argued that, with respect to defendants Cherry, Rush and Brown, the plaintiff had failed to properly exhaust the available administrative remedies prior to commencing this action. The Prison Litigation Reform Act provides in 42 U.S.C. § 1997e(a) that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

<u>See</u> <u>Santana v. United States</u>, 98 F.3d 752 (3d Cir. 1996). Pennsylvania provides such a mechanism.[2]  This requirement also has a procedural default component. <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004).

Exhibit A submitted in support of the defendants' motion is a copy of the relevant inmate grievance regarding this incident. In Grievance No. 19709, submitted on April 21, 2002, the plaintiff alleged:

> On April 20, 2002, I was unlawfully and unconstitutionally inter alia subjected to use of excessive force and cruel and unusual punishment by official acting under

---

[2]See Administrative Directive 804.

color of state law, while another official stood by and encouraged such attack, beating or violation of laws, an reasonable and imminent apprehension of being subjected to harmful and offensive bodily contact and unnecessary, unreasonable and excessive force for the very purpose of causing harm, injuries or suffering. And knowing such to cause harm or injuries inter alia is violation of law...

In their motion, defendants argue that, because the plaintiff failed to identify Officers Cherry, Brown and Rush by name, he had failed to properly exhaust his administrative remedies. In his objections, the plaintiff notes that, in a response to his grievance dated May 31, 2002, the grievance officer stated that:

All staff involved were interviewed regarding your claims.  Likewise, all inmate witnesses whom you provided were interviewed.  Your claims were substantiated in part by your witnesses.  Staff summarily denied all accusations of wrong doing in their entirety.[3]

In addition, the plaintiff has submitted a report, prepared by Security Lieutenant Daniel Burns on May 31, 2002, in which Burns stated that: 1) the Security Office directed him to conduct an investigation on the allegation of abuse described in Grievance No. 19709; 2) as part of this investigation, he interviewed Sides, who told him that he "was intentionally, maliciously, and unlawfully abused and beat by Officer Cherry, while Officer Rush watched" and that Cherry had signaled to Officer Brown to open the cell door so that he could enter and commit the assault; 3) Sides provided the names of three other inmates, who Burns interviewed (they confirmed his account of the assault); 4) he interviewed Juliani, Rush, Brown and Cherry, all of whom denied any knowledge of the alleged assault; and 5) although he could not substantiate Sides's allegations of staff misconduct, Burns recommended allowing both Sides and Cherry,

---

[3]Docket No. 74 Ex. A2.

4

who had volunteered to participate in a polygraph interview, to do so.[4]

In the Spruill case, the court specifically held that, when a prison grievance officer responded to a grievance by identifying the individuals involved, the prisoner's procedural default should be excused.  372 F.3d at 234.  Recently, the Court of Appeals confirmed this holding in a case in which the prisoner indicated in his grievance (which arose after he requested a cell transfer because of a violent cellmate, the prison did not act, and the prisoner was assaulted) only that he spoke to the "2-10" staff about an assault, but the unit manager (Hollibaugh) indicated in the Initial Review Response ("IRR") that acknowledged the conversations the prisoner had with him about a transfer request and he acknowledged that he was the "grievance officer," i.e., the person who would be approached regarding a cell change. Williams v. Beard, No. 06-1518 (3d Cir. Apr. 3, 2007).

As the court observed in Williams:

"[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued."  The grievance did precisely that, and the IRR evidences knowledge on the part of prison officials not only that there was a problem, but that Hollibaugh was involved.

Id. at 6 (quoting Jones v. Bock, 127 S.Ct. 910, 923 (2007)).

In this case, the prison was unquestionably alerted as to the assault Sides was alleging occurred.  Moreover, the defendants knew who was allegedly involved, as the IRR indicated that "All staff involved were interviewed regarding your claims" and Security Lieutenant Burns explicitly states that he interviewed Cherry, Brown, Rush and Juliani, the defendants named herein.

---

[4]Docket No. 74 Ex. A6.

5

Defendants bear the burden of demonstrating that they are entitled to the affirmative defense that the plaintiff has failed to exhaust his administrative remedies or has procedurally defaulted his attempt to do so.  Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002).  Based upon the documents of record, they have failed to meet this burden.  They have not presented any further arguments with respect to defendants Cherry, Brown and Rush.  Therefore, with respect to these three defendants, the motion for summary judgment should be denied.

With respect to defendant Juliani, the defendants have raised an additional argument. They have presented the declaration of Richard Juliani, in which he states that Sides did not report to him on April 20, 2002 that he had been assaulted and wanted to go to medical and that Sides did not make a request to go to medical until the middle of May 2002 and Juliani made sure this request was honored.[5]  Thus, they contend that the record contains no evidence to support the claim that Juliani denied the plaintiff medical attention.

However, the plaintiff has submitted the declaration of inmate Sean Jackson, who states that, on April 20, 2002, he was standing in the hallway when he heard Sides tell Juliani that he had been assaulted by Officer Cherry and that he wanted to go to medical, but that Juliani "stated that he wasn't doing anything for I/M Sides and that I/M Sides brings a majority of the problems amongst himself."[6]

In addition, defendants have submitted portions of plaintiff's medical records, which reflect that he was not seen from April 17, 2002 until May 14, 2002, at which time the nurse

---

[5]Docket No. 63 Ex. D.

[6]Docket No. 74 Ex. G.

6

concluded that he was falsifying information for medical attention.[7]  However, he has presented evidence that he was denied medical attention at the time of the assault and that, in subsequent visits to medical, he did receive pain killers, muscle relaxers and anti-inflammatory medications from injuries that he alleges he received in the assault.[8]

The Court cannot weigh the credibility of witnesses' affidavits in the course of deciding motions for summary judgment.  Nor can the Court resolve the conflicting evidence in the record.  Therefore, both defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment should be denied.

Within ten (10) days after being served, any party may serve and file written objections to this Amended Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,


s/Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge

Dated: April 12, 2007

---

[7]Docket No. 63 Ex. E.

[8]Docket No. 74 Ex. C.